UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAAMITI SAMBA OLIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Case No. 4:22-CV-01381 |
| | § | |
| CALEB BRUMLEY, J. RICHARDSON, | § | |
| JAMARCUS GOODALL, KORI | § | |
| BECHAM and RONALD WEAVER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

At all times relevant to this case, plaintiff Taamiti Samba Oliver was an inmate in the Estelle Unit of the Texas Department of Criminal Justice ("TDCJ"). He filed suit under 42 U.S.C. § 1983 alleging that the Defendants failed to protect him from serious harm. The Defendants have now moved for summary judgment. (Dkt. No. 16). Oliver responded to the Motion, (Dkt. No. 25), and the Defendants replied, (Dkt. No. 26). For the reasons set forth below, the Defendants' Motion for Summary Judgment, (Dkt. No. 16), is **GRANTED**, and this case is dismissed with prejudice.

### I.   BACKGROUND[1]

The following facts are not in dispute. On October 30, 2020, Oliver filed a Step 1 grievance in which he expressed fear for his life, alleging threats from members of the Tango Blast prison gang. (Dkt. No. 16 at 9). Oliver alleged that Tango Blast members

---

[1] For purposes of addressing this Motion, the Court accepts all factual allegations in the operative complaint as true and views them in the light most favorable to the nonmovant. *See White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

Heriberto Eddie Rivera and Joshua Rene Davila told him that they were going to jump him and stab him. (Dkt. No. 16-2 at 59). TDCJ authorities investigated and concluded that there was no meaningful threat, though Oliver disputes that the investigation was thorough or adequate. (Dkt. No. 16 at 10). On November 17, 2020, Defendant Richardson—the Estelle Unit Warden—denied Oliver's grievance, stating that there was insufficient evidence to substantiate the allegations. (*Id.*).

On November 17, 2020, Oliver filed another Step 1 grievance, again expressing fear for his life. (*Id.*). Two days later, he filed a Step 2 grievance appealing the denial of his first grievance, again expressing his fear that his life would be in danger if he was returned to general population at the Estelle Unit. (*Id.*). On December 7, 2020, Richardson responded to the second Step 1 grievance, noting that the allegations were previously investigated and found to be unsubstantiated. On December 17, 2020, Oliver filed a Step 2 grievance. TDCJ denied the second Step 2 grievance on December 17, 2020, and denied the first Step 2 grievance on December 22, 2020.

In July 2021, Oliver was stabbed by another inmate who had no known gang affiliation. (*Id.* at 7). Oliver's wounds were closed with staples and sutures, and he did not require surgery or hospitalization. (Dkt. No. 16-3 at 11).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). But the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

### III. DISCUSSION

#### A. MOTION TO STRIKE

As a preliminary matter, Oliver asks the Court to strike the affidavit of Lorena McClintick, arguing that she attests to matters about which she has no personal knowledge and draws unjustified inferences from relevant documents. McClintick is a Program Supervisor V for TDCJ's Correctional Institutions Division. (Dkt. No. 16-1 at 2). Her affidavit explains certain TDCJ policies and summarizes relevant reports and other evidence. To the extent that her affidavit draws inferences rather than engages in summary, this Court is perfectly capable of reading the relevant documents, and is aware of its obligation to draw all reasonable inferences in favor of Oliver. There is no need to strike the affidavit.

#### B. EXHAUSTION OF REMEDIES

Defendants Becham and Richardson argue that Oliver failed to exhaust his available administrative remedies against them. Before bringing a federal lawsuit challenging prison conditions, a prisoner must first exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

> The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level. This court has previously held that a prisoner must pursue a grievance through both steps for it to be considered exhausted.

*Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004).

Becham and Richardson contend that Oliver did not mention Becham in any of his grievances, and only mentioned Richardson in one of his Step 2 grievances. Oliver responds that he referenced the UCC Committee in his grievances and that these Defendants were on that committee.

Oliver does not direct the Court to anything in the record showing that Becham and Richardson were on the committee, but the Defendants do not dispute Oliver's argument in their reply. It is therefore at least a disputed issue of fact whether Oliver provided sufficient notice that his failure to protect complaint was addressed to Becham and Richardson. *See, e.g., Johnson*, 385 F.3d at 517 ("as a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining"). Summary judgment is therefore not appropriate on exhaustion grounds at this time.

### C. PERSONAL INVOLVEMENT

To prevail, Oliver must demonstrate that each Defendant was personally involved in the alleged constitutional violation, or that the Defendant committed wrongful acts that were causally connected to a constitutional deprivation. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012). In this case, it is undisputed that TDCJ officials placed Oliver in protective custody and launched an investigation after Oliver complained that his life was in danger. While Oliver disputes the thoroughness of the investigation, he does not contend that there was no investigation. His Complaint therefore hinges on the decision to return him to general population. The Defendants argue that none of them was personally involved in making that decision.

5

Oliver in turn alleges that the Defendants all served on the UCC Committee that made the decision to return him to general population. None of the parties direct the Court to any evidence showing who served on that committee. It is therefore a disputed issue of material fact whether the Defendants were personally involved in the decision to return Oliver to general population.

### D.  FAILURE TO PROTECT

Prison officials have a well-established constitutional duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (internal quotation marks and citation omitted).

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious . . . a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* at 834, 114 S.Ct. at 1977 (internal quotation marks and citations omitted). While Oliver cites to evidence about generally dangerous conditions throughout TDCJ and complains that the investigation into his complaint was inadequate, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. at 1982–83.

6

The undisputed facts show that: Oliver complained that he was being targeted by a prison gang; he was placed in protective custody; TDCJ launched an investigation; the investigation concluded that there was nothing to substantiate Oliver's claims; Oliver was returned to general population; and, some months later, Oliver was stabbed by an inmate who had no known gang affiliations. The Defendants present evidence that none of them conducted the investigation. (*See* Dkt. No. 16-2 at 58, 76). Accepting as true Oliver's assertion that the Defendants served on the UCC committee, it was reasonable for them to rely on the results of the investigation to conclude that Oliver could safely be returned to general population. That he ultimately suffered injury from another source does not change this conclusion. The Defendants did not violate their Eighth Amendment duty to protect Oliver from harm.

### E. QUALIFIED IMMUNITY

Finally, the Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Elder v. Holloway*, 510 U.S. 510, 512, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994). The Fifth Circuit has held that, to overcome qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (internal quotation marks and citation omitted) (emphasis in the original).

7

As discussed above, assuming that the Defendants served on the committee that decided to return Oliver to general population, their actions were reasonable under the circumstances. An investigation concluded that Oliver's claim that he was being targeted was unfounded. The decision to return Oliver to general population was reasonable under the Eighth Amendment in light of these investigative findings. The Defendants are therefore entitled to qualified immunity.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Dkt. No. 16), is **GRANTED,** and the case is **DISMISSED WITH PREJUDICE**.

It is SO ORDERED.

Signed on September 14, 2023.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**